IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY BREIDINGER, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | JURY DEMANDED |
| | § | |
| SUPERIOR PLUS CORPORATION, | § | |
| SUPERIOR PLUS CONSTRUCTION | § | |
| PRODUCTS CORP., and SUPERIOR | § | |
| PLUS LP, individually and d/b/a | § | |
| WINROC and SPI, | § | |
| Defendants. | § | |

---

## COMPLAINT
---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Larry Breidinger, Plaintiff, filing this his *Complaint*, complaining of Superior Plus Corporation, Superior Plus Construction Products Corp., and Superior Plus LP, individually and doing business as Winroc and SPI (collectively referred to herein as "Defendants"), and would respectfully show the following

### I. PARTIES

1.1.    Plaintiff, *Larry Breidinger* ("Breidinger" or "Plaintiff"), is an individual residing in Chico, Butte County, California.

1.2.    Defendant, *Superior Plus Corporation* ("Superior Corp."), is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada. Plaintiff requests *Superior Plus Corporation* be served through its United States affiliate, *Superior Plus Construction Product Corp.,* by serving its registered agent, Corporation Service Company d/b/a

CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

1.3.    Defendant, *Superior Plus Construction Products Corp.* ("Superior Products Corp."), is a Pennsylvania corporation with its principal place of business in East Petersburg, Pennsylvania. *Superior Plus Construction Products Corp.* may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

1.4.    Defendant, *Superior Plus LP* ("Superior LP"), is a Canadian Limited Partnership with its principal place of business in Calgary, Alberta, Canada. Plaintiff requests *Superior Plus LP* be served through its United States affiliate, *Superior Plus Construction Product Corp.,* by serving its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

## II. VENUE

2.1.   Venue of this action is proper in this district and division because events giving rise to one or more of claims alleged herein occurred in part in this division and judicial district.

## III. JURISDICTION

3.1.   This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction (28 U.S.C. § 1331), diversity jurisdiction (28 U.S.C. § 1332) and supplemental jurisdiction (28 U.S.C. § 1367). Specifically, this case is brought pursuant to the Americans With Disabilities Act ("ADA"), 29 U.S.C. § 12101 *et seq.*, as amended, and the court's supplemental jurisdiction.

## IV. STATEMENT OF CAUSES OF ACTION

4.1.    Superior Corp. is an "employer" as that term is defined in the Texas Commission on Human Rights Act ("TCHRA").

4.2.    Superior Products Corp. is an "employer" as that term is defined in the TCHRA.

4.3.    Superior LP is an "employer" as that term is defined in the TCHRA.

4.4.    Superior Corp. is an "employer" as that term is defined in the ADA.

4.5.    Superior Products Corp. is an "employer" as that term is defined in the ADA.

4.6.    Superior LP is an "employer" as that term is defined in the ADA.

4.7.    Superior LP is a wholly owned subsidiary of Superior Corp.

4.8.    Superior LP has three operating divisions comprised of Energy Services, Specialty Chemicals, and Construction Products Distribution.

4.9.    Superior LP's Construction Products Division does business under the assumed names "Winroc" and "SPI."

4.10.   All of the defendants do business as Winroc and SPI.

4.11.   Defendants operate as an "integrated enterprise" as those terms are used in relation to the relevant employment laws at issue in this case.

4.12.   One or more of Defendants exercised sufficient control over Breidinger and/or the adverse employment actions taken against Breidinger such that Defendants should be considered "joint employers" or "co-employers" of Breidinger for the purposes of the claims asserted by Breidinger herein.

4.13.   Defendants employed individually or as an integrated enterprise fifteen or more "employee(s)," for each working day for each of twenty or more calendar workweeks in the current or preceding calendar year, as those terms are defined in the ADA and TCHRA.

4.14.   Breidinger began working for Winroc in October 2010.

4.15.   Breidinger was hired as District Manager, Texas GSD, at Winroc's Houston, Texas office.

4.16.   While working for Winroc, Breidinger was supervised by Pete Welly ("Welly"), Vice President, Operations, GSD U.S., and Dave Opre ("Opre"), Western Regional Manager, GSD.

4.17.    Breidinger was diagnosed with prostate cancer in approximately July 2011.

4.18.   As a part of his treatment, Breidinger underwent surgery on his prostate in September 2011.

4.19.   Breidinger's cancer, and ensuing surgery, resulted in serious complications and side effects.  Specifically, Breidinger began experiencing substantial limitations in the functioning of his genitourinary and reproductive systems.

4.20.   Following Breidinger's surgery, Welly and Opre began making offensive and harassing comments to Breidinger regarding incontinence and sexual dysfunction.

4.21.   For example, Welly asked Breidinger whether Breidinger's "dick" could "get hard." When Breidinger replied that he was no longer able to get an erection following his surgery, Welly crassly stated, "Well, your wife can just suck it harder."

4.22.   Opre made similar humiliating comments to Breidinger and others about Breidinger's medical issues related to his cancer. In approximately late October 2012, Breidinger met Opre at a restaurant in the Woodlands for dinner. During dinner, Opre told Breidinger that he believed Breidinger was using his cancer and its resulting effects as a crutch, and that Breidinger should think about another career. After dinner, Breidinger stood up to leave, immediately lost control of his bladder, and urinated on himself. After changing his absorbing pads, Breidinger told Opre that Opre did not understand the difficulties Breidinger's cancer and treatments were causing. Opre responded that it was "Bullshit!" and that Breidinger needed to get himself together.

4.23.   Because Breidinger was limited in his ability to, among other things, travel long distances, Breidinger requested Winroc provide him with a reasonable accommodation. Following Breidinger's request, Opre claimed Breidinger was making excuses, and told him to do his job.

4.24.   In approximately February 2012, during a company meeting, Welly stated Winroc's new company slogan was "fit in or f*** off." Welly then stared at Breidinger.

4.25.   On February 20, 2012, Defendants terminated Breidinger.

4.26.   The reason given by Winroc for Breidinger's termination was lack of ability to perform his job duties.

4.27.   During Breidinger's employment and following his termination, Winroc disclosed Breidinger's disability and medical condition to third-party industry vendors.

4.28.   Following Winroc's termination of Breidinger, Breidinger engaged in negotiation with a potential employer in an effort to secure a position training sales managers. Breidinger's potential employer expressed their plans to hire Breidinger, and Breidinger accepted the job offer. Following Breidinger's acceptance of the employment, Breidinger provided his new employer with Welly's contact information as a job reference. Only after Breidinger provided Welly as a reference did Breidinger's new employer maintain no job position was available for Breidinger.

4.29.   Winroc interfered with Breidinger's ability to secure employment.

### V.   ADA CLAIM—DISABILITY DISCRIMINATION AND RETALIATION

5.1.   Breidinger incorporates the factual allegations recited above and would show Winroc's conduct constitutes violations of the ADA in that Winroc discriminated against Breidinger by creating a hostile work environment and terminating him because of a disability, a "regarded as" disability, and/or record of disability, and in retaliating against him after his termination because he engaged in protected conduct. Winroc failed to make a reasonable accommodation for Breidinger, though Breidinger made such a request. Disability and/or retaliation were a motivating factor in the adverse employment actions Breidinger suffered.

5.2.   Winroc's conduct has caused Breidinger damage by way of loss of wages and benefits, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

5.3.   At this point, reinstatement is not feasible, though Breidinger seeks it if it is found to be feasible.

5.4.    Winroc's conduct was carried out with malice or reckless indifference to Breidinger's federally-protected rights and justifies the imposition of punitive damages in an amount to be determined by the trier of fact sufficient to punish and deter Defendants from similar conduct in the future.

### VI.  TCHRA Claim—Disability Discrimination and Retaliation

6.1.    Breidinger incorporates the factual allegations recited above and would show Winroc's conduct constitutes violations of the TCHRA in that Winroc discriminated against Breidinger by creating a hostile work environment and terminating him because of a disability, a "regarded as" disability, and/or record of disability, and in retaliating against him after his termination because he engaged in protected conduct. Winroc failed to make a reasonable accommodation for Breidinger, though Breidinger made such a request. "Disability" and/or retaliation were motivating factors in the adverse employment actions Breidinger suffered.

6.2.    Winroc's conduct has caused Breidinger damage by way of loss of wages and benefits, and other pecuniary and non-pecuniary (mental anguish, emotional distress, humiliation, inconvenience, loss of enjoyment of life) compensatory damages he has suffered in the past, and in reasonable probability, will suffer in the future, all in an amount in excess of the minimum jurisdictional requirements of this court.

6.3.  At this point, reinstatement is not feasible, though Breidinger seeks it if it is found to be feasible.

6.4.    Winroc's conduct was carried out with malice or reckless indifference to Breidinger's state-protected rights and as such justifies the imposition of punitive damages in an amount to be determined by the trier of fact sufficient to punish and deter Defendants from similar conduct in the future.

## VII. ATTORNEY'S FEES

7.1.  Defendants' refusal to abide by their statutory obligations to Breidinger has made it necessary for Breidinger to employ the undersigned attorney to file this lawsuit. As such, Breidinger requests the court award a reasonable fee, pursuant to the ADA and TCHRA for his attorney's services rendered and to be rendered herein, as well as expenses and court costs, both at the trial court level and in the event of subsequent appeals, including to the Supreme Court.

## VIII. ADMINISTRATIVE REQUIREMENTS

8.1.  Breidinger has satisfied all administrative requirements to bringing his claims under the TCHRA and ADA. Breidinger timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and by deferral with the Texas Workforce Commission—Civil Rights Division ("TWC-CRD"), on or about July 31, 2012.

8.2.  On or about June 3, 2013, Breidinger received a Notice of Right to Sue from the EEOC.

8.3.  Breidinger has satisfied his administrative requirements under the TCHRA and the ADA.

8.4.  Breidinger timely filed this lawsuit.

## IX. JURY DEMAND

9.1.  Breidinger demands a jury on all issues to be tried in this matter.

## X. REQUEST FOR EXPEDITED TRIAL SETTING

10.1.    Breidinger has received a dreadful prognosis regarding his cancer and chances of recovery. Accordingly, Breidinger requests the court set this case for an expedited trial setting. *See* TEX. LAB. CODE § 21.257 ("The court shall set an action brought under this subchapter for hearing at the earliest practicable date to expedite the action."); TEX. R. CIV. P. 1 ("…great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable.").

### PRAYER

WHEREFORE, Larry Breidinger requests that Defendants be cited to appear and that upon final trial he be awarded judgment against Defendants for actual damages, reinstatement if not found unfeasible, front pay, reasonable attorney's fees, costs of court, pre-judgment and post-judgment interest, and such other and further relief, whether general or special, legal or equitable, to which he may be justly entitled.

Respectfully submitted,

LAW OFFICE OF G. SCOTT FIDDLER, P.C.


/s/ **G. SCOTT FIDDLER**
_____
G. SCOTT FIDDLER
SBOT #06957750
FID #12508
scott@fiddlerlaw.com
ANDREW W. REED
SBOT #24094735
FID #1140192
areed@fiddlerlaw.com
9601 Jones Road, Suite 250
Houston, Texas 77065
Tel.:    281-897-0070
Fax:     281-897-0078

ATTORNEY-IN-CHARGE
FOR PLAINTIFF